EILEEN STANDERWICK & others[1] *vs.* ZONING BOARD OF
APPEALS OF ANDOVER & another.[2]

Essex. February 8, 2006. - June 16, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Zoning,* Comprehensive permit, Person aggrieved. *Housing. Practice, Civil,*
Zoning appeal, Standing. *Statute,* Construction.

This court concluded that although the Legislature chose in G. L. c. 40B,
§ 21, to incorporate the judicial review procedure established in G. L.
c. 40A, § 17, the substantive standing requirements of G. L. c. 40A were
neither the same as nor incorporated into G. L. c. 40B. [26-28]

In a civil action brought in Superior Court seeking review of a town zoning
board's decision to issue a comprehensive permit to a developer to
construct a multi-unit affordable housing project on a certain site, the
claim of the plaintiffs (abutting landowners to the site) that the project
would diminish their property values did not confer standing on them as
aggrieved persons within the meaning of G. L. c. 40B, § 21, where the
preservation of real estate values of property abutting an affordable hous-
ing development was clearly not a concern that the G. L. c. 40B regulatory
scheme was intended to protect [28-32]; further, the plaintiffs did not meet
their burden to establish standing on their other asserted grounds, where
the developer rebutted the presumption that they were "persons aggrieved"
by presenting evidence, through unchallenged affidavits of experts, that the
plaintiffs' claims of traffic and drainage problems were unfounded, and
through discovery of the plaintiffs, that they had no factual basis for their
claims of increased crime or vandalism [32-37].

CIVIL ACTION commenced in the Superior Court Department on
June 11, 2002.

The case was heard by *Howard J. Whitehead,* J., on a motion
for summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Kevin P. O'Flaherty* for Avalon at St. Clare, Inc.

[1]Kirstin Clarke, Susan Powers, Dean Shu, Michael Marcoux, and Made-
laine St. Amand.

[2]Avalon at St. Clare, Inc.

*Andrew A. Caffrey, Jr.,* for the plaintiffs.

*Thomas J. Urbelis,* for Zoning Board of Appeals of Andover, was present but did not argue.

The following submitted briefs for amici curiae:

*Michael Pill,* pro se.

*R. Jeffrey Lyman, Michael K. Murray, & Adam Hollingsworth* for Greater Boston Real Estate Board & others.

MARSHALL, C.J. We consider in this case whether a claim of diminution of property values by abutting landowners constitutes a cognizable basis for standing to challenge a comprehensive permit for the construction of affordable housing granted pursuant to G. L. c. 40B, §§ 20-23 (act). Because the diminution of real estate values is not an injury to an interest that G. L. c. 40B was intended to protect, we conclude that it does not.

In 2002, the zoning board of appeals of the town of Andover (board) issued a comprehensive permit to Avalon at St. Clare, Inc. (developer), to construct a four-story apartment building, with one-quarter of the units to be reserved as affordable rental housing for low and moderate income tenants. The property at issue is located in an area of Andover zoned for single-family homes on one-acre lots. The plaintiffs, abutting and neighboring landowners, appealed to the Superior Court claiming they were "aggrieved" by the board's decision. See G. L. c. 40B, § 21.[3] A judge in the Superior Court allowed the developer's motion for summary judgment, ruling that the plaintiffs lacked standing to challenge the issuance of the comprehensive permit because their claim that the affordable housing project would diminish their property values was "not a concern recognized by G. L. c. 40B," and therefore not an injury that could confer standing on the plaintiffs.

[3]General Laws c. 40B, § 21, provides in pertinent part: "Any person aggrieved by the issuance of a comprehensive permit or approval may appeal to the court as provided in [G. L. c. 40A, § 17]." General Laws c. 40A, § 17, provides in pertinent part: "Any person aggrieved by a decision of the board of appeals . . . may appeal to . . . the superior court department in which the land concerned is situated . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk. . . . The complaint shall allege that the decision exceeds the authority of the board . . . and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled."

The Appeals Court reversed, holding that diminution in real estate values is "an injury that is a tangible and particularized injury to a private property or legal interest protected by zoning law," which it held to be "a valid basis for a claim of standing" to challenge the issuance of a comprehensive permit under G. L. c. 40B. *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 64 Mass. App. Ct. 337, 341, 342 (2005) (*Standerwick*). It further concluded that the plaintiffs' presumptive standing as abutters[4] was not adequately challenged by evidence submitted by the developer in support of its motion for summary judgment. *Id.* at 342-344. We granted the developer's application for further appellate review. We affirm the decision of the Superior Court judge.[5]

1. *Background.* As described more fully by the Appeals Court, *Standerwick, supra* at 338-339, the developer seeks to construct a 115-unit four-story apartment building on a 9.127-acre parcel at 460 River Road in Andover (site). Twenty-nine units of the building will be designated for low and moderate income housing. The site, which is enclosed by a ten-foot high masonry wall running parallel to three of the property's boundaries, is currently improved by a four-story brick building built in 1959, and is used as a residence for a religious community. The developer intends to retain the masonry wall but raze the existing building and construct a new building on the site.

In October, 2001, after the board denied the developer's first application for a comprehensive permit to construct 152 units in eight buildings on the property, the developer appealed to the

[4]As to three plaintiffs who did not join in this appeal, the judge ruled they did not have the benefit of a presumption of standing because they are not direct abutters to the site, nor are they owners of property within 300 feet of the site, which in either event would give them a presumption of standing to challenge the issuance of a comprehensive permit. See G. L. c. 40A, § 11; *Watros* v. *Greater Lynn Mental Health & Retardation Ass'n*, 421 Mass. 106, 110-111 (1995). The judge also ruled that these three plaintiffs had not alleged any facts to indicate that the proposed development would affect them in any way distinct from the manner in which all town residents would be affected.

[5]We acknowledge the amicus brief of the Greater Boston Real Estate Board, Citizens' Housing and Planning Association, the National Association of Industrial and Office Properties (Massachusetts Chapter), and the Massachusetts Association of Realtors, and the amicus brief of Michael Pill.

housing appeals committee (HAC) of the Department of Housing and Community Development, pursuant to G. L. c. 40B, §§ 22-23. The developer, the board, and a local citizens' group known as "Protect Andover Zoning" (composed of the plaintiffs and others) then engaged in HAC-sponsored mediation, during which the developer agreed to reduce the scope of its original proposal to 115 units in a single, four-story building, subject to certain other conditions. The HAC remanded the case to the board for further consideration. After additional public hearings, the board approved the comprehensive permit at issue in May, 2002.

The plaintiffs commenced this action in June, 2002, claiming that as abutters and neighbors of the proposed development, they were "aggrieved" by the issuance of the comprehensive permit. See G. L. c. 40B, § 21.[6] In response to the developer's discovery, the plaintiffs identified the following as the adverse impacts of the proposed housing development on them: light and noise pollution, traffic and related safety concerns, an increase in crime or vandalism, adverse drainage effects on septic systems, a decrease in the plaintiffs' privacy, and a diminution of their property values. Although requested to do so, the plaintiffs offered no expert opinion to support any of the claimed adverse impacts.[7]

In March, 2003, the developer filed a motion for summary judgment supported by affidavits on the issue of the plaintiffs' standing to challenge the comprehensive permit. In one, a civil engineer opined that the development would have no adverse

---

[6]The plaintiffs alleged that the decision of the board was not consistent with relevant laws or regulations and that the board had exceeded its authority because (1) the site is a "remote rural area of single family homes on one acre lots" not serviced by public transportation or other services; (2) the site is "inappropriate" for a "large multi-family residential structure, particularly at the density approved"; (3) the "public safety" of the residents of the development and of the town has "not been adequately protected and provided for"; and (4) the "public health issue of sanitary sewage disposal remains unresolved." They also alleged that the "regional need for low and moderate income housing is . . . outweighed by valid planning objections."

[7]For example, one plaintiff described the basis for her claim that rates of vandalism would increase as a "gut feel on just reading the papers" and "personal experience."

impact on local water and sewer service,[8] and that a new drainage system would adequately handle storm water drainage and run-off in conformance with State environmental standards. In a second affidavit, a traffic engineer stated that the development would not create unacceptable levels of service at various relevant intersections in the area and that development-generated traffic could be "adequately and safely" absorbed by local roads. With respect to other anticipated adverse impacts, the developer argued that the plaintiffs, who had conceded in their own responses to discovery that they had no evidence to support them, would not be able to prove their claims at trial.[9]

In opposition to the developer's motion for summary judgment, the plaintiffs submitted affidavits from two real estate professionals, each of whom claimed that the proposed development would diminish the value of the plaintiffs' properties.[10] The developer moved to strike the affidavits on the ground that property value diminution cannot confer standing in a G. L. c. 40B case "because preservation of property values is not within the scope of interests protected" by G. L. c. 40B.[11]

A judge in the Superior Court allowed the developer's mo-

---

[8]The civil engineer concluded that, contrary to the plaintiffs' assertions, the development would improve water service in the area: as a result of a new water line the developer would install and connect to the town water system, town water service would now be available to certain homes and new hydrants would improve fire protection.

[9]As noted earlier, the other concerns were light and noise pollution, an increase in crime or vandalism, a decrease in privacy resulting from the change in the rural character of the neighborhood, and a diminution in property values.

[10]One of the affidavits was submitted by Kirstin Clarke, a plaintiff in this action. A licensed real estate sales person, Clarke stated that the proposed development "will devalue my property by as much as 20%" pointing to "location, density, traffic, and the impact of non-conforming uses and structures which may impact property value." The plaintiffs' second affidavit was from a certified real estate appraiser who stated that the property of the "immediate" abutters would suffer a 20% diminution in value because the proposed structure would "be substantially greater in height" than permitted under current zoning, the development would "significantly increase area traffic," and a "trash compactor" proposed for the rear of the site would "affect" the view of the site's "immediate" abutters.

[11]The developer also argued that the two affidavits should be struck because they did not disclose facts on which the opinions were based, lacked a basis in any reliable methodology, and were not admissible as expert opinion.

tion for summary judgment, concluding that the plaintiffs' claims of light and noise pollution did not raise cognizable health and safety concerns but were "purely aesthetic"; that the plaintiffs' traffic claims would not impact safety; and that their claim that drainage might raise health and safety issues was "speculative." He concluded that the developer had rebutted the plaintiffs' presumption of standing on the traffic and drainage issues by expert opinion and that the plaintiffs had proffered nothing to support their "apprehension and speculation" that the proposed development would lead to an increase in crime or vandalism. As noted earlier, the judge ruled that the claim of diminution of real estate values could not serve as a basis for standing. The judge allowed the developer's motion to strike the plaintiffs' real estate value affidavits, although his reason for doing so is not clear. See note 11, *supra.* The plaintiffs appealed.

The Appeals Court held that whether a person is "aggrieved" under G. L. c. 40B, § 21, is governed by the "substantive standards" applicable to standing analysis under G. L. c. 40A, § 17, "such as property values, traffic, or parking," *Standerwick, supra* at 340. This, it said, included the plaintiffs' claim that their property values would diminish if the proposed affordable housing development went forward.[12] The Appeals Court further determined that, because of their presumptive standing as abutters, the plaintiffs had no burden to produce any evidence supporting their claims "unless and until the defendants had offered evidence 'warranting a finding contrary to the presumed fact,' " *id.* at 342, quoting *Watros* v. *Greater Lynn Mental Health & Retardation Ass'n,* 421 Mass. 106, 111 (1995) (*Watros*). Concluding that reliance on the plaintiffs' failure to identify in discovery any evidence to support their claims of aggrievement did not constitute such "evidence,"[13] the court ruled that the developer had not come forward with

---

[12]As to the plaintiffs' other claims of aggrievement, the Appeals Court declined to address "the merits or viability of all of the bases on which the plaintiffs claim[ed] standing" because, it concluded, the plaintiffs had "at least one valid basis, the claim that their property values would diminish," sufficient to confer standing. *Standerwick* v. *Zoning Bd. of Appeals of Andover,* 64 Mass. App. Ct. 337, 345 n.16 (2005) (*Standerwick*).

[13]The Appeals Court explained that, in its view, it is not enough for a defendant "merely to dispute the plaintiffs' claim of standing and to show that

sufficient evidence to rebut this presumption of standing. *Id.* at 344-345 & n.16.

2. *Legally cognizable injury under G. L. c. 40B.* We first address the scope of the cognizable interests protected by G. L. c. 40B, and then turn to the issue of the plaintiffs' presumptive standing.[14] The developer asserts that the Appeals Court erred in concluding that analysis of the injury that constitutes cognizable "aggrievement" under G. L. c. 40B, § 21, is the same as the analysis for injury constituting "aggrievement" cognizable under G. L. c. 40A, § 17. It next argues that, in any event, diminution in real estate values is not a legally cognizable injury for purposes of standing to challenge the issuance of a comprehensive permit. We agree with the developer that assertions of harm that confer standing as a "person aggrieved" under G. L. c. 40A are not necessarily cognizable as a basis for "aggrievement" under G. L. c. 40B.

General Laws c. 40B, § 21, provides that "[a]ny person aggrieved by the issuance of a comprehensive permit or approval may appeal to the court as provided in [G. L. c. 40A, § 17]." See note 3, *supra.* While the words "person aggrieved" are not to be narrowly construed, *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957) (*Marotta*), the Legislature has

the plaintiffs have no evidence to support their position." *Standerwick, supra* at 342. In so doing, the Appeals Court addressed *Cohen* v. *Zoning Bd. of Appeals of Plymouth*, 35 Mass. App. Ct. 619 (1993) (*Cohen*), by stating: "We can no longer say, as we did in [*Cohen, supra*] at 621, that the filing of a motion for summary judgment constitutes a 'challenge' sufficient to make the statutory presumption recede, and requires the plaintiffs to come forward with 'specific facts' to support their assertion of status as aggrieved persons, as would be required under *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991)." *Standerwick, supra* at 343-344.

[14]On appeal, the plaintiffs press two arguments, which we need not address: (1) the judge erred in striking the two affidavits from the real estate professionals submitted by the plaintiffs in opposition to the developer's motion for summary judgment, see notes 10 and 11, *supra*; and (2) the failure of the board to make findings of fact supporting the issuance of the comprehensive permit establishes that material questions of fact exist that precluded summary judgment. We need not address the first issue because, as we shall explain, diminution of real estate values cannot be the basis for the plaintiffs' standing in this G. L. c. 40B case. See discussion, *infra.* We do not address the merits of the plaintiffs' second argument because we affirm the judge's ruling that the plaintiffs do not have standing to challenge the issuance of the comprehensive permit.

"intentionally limited the class of parties with standing to challenge a comprehensive permit," and likely sought to avoid "manipulation of the comprehensive permitting process to thwart the construction of low and moderate income housing." *Planning Bd. of Hingham* v. *Hingham Campus, LLC*, 438 Mass. 364, 370 (2003) (*Hingham Campus*).

In reaching its conclusion that the "substantive standards" applicable to standing requirements under G. L. c. 40B are the same as those applicable under G. L. c. 40A, *Standerwick, supra* at 340, 342, the Appeals Court relied on this court's statement in *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 553 (1999) (*Bell*), that the "same standing requirements apply to appeals under G. L. c. 40A and G. L. c. 40B appeals." *Standerwick, supra* at 340. In *Bell*, where it was the abutter plaintiff arguing that G. L. c. 40A was irrelevant to the analysis, we were not required to and did not examine the potential differences between legally cognizable injuries under the two statutes as a consequence of the differing interests the two land use schemes were intended to protect. *Bell, supra* at 554. Although analyzed using broad language concerning standing under G. L. c. 40A, the plaintiff in that comprehensive permit case did not satisfy the standing requirement of a "person aggrieved" under G. L. c. 40A, *id.*, and it was therefore not necessary for the court to consider whether a plaintiff who *could* satisfy G. L. c. 40A standing requirements would automatically be a "person aggrieved" for purposes of G. L. c. 40B.

Both G. L. c. 40A and G. L. c. 40B use the term "person aggrieved"; it is this term that we interpret in like manner. See *Hingham Campus, supra* at 368 ("For purposes of interpreting the term 'person aggrieved' under the comprehensive permit statute, we look to interpretation of the identical term in G. L. c. 40A, § 17"). Specifically, a "person aggrieved" as that term is used in both statutes must assert "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Harvard Sq. Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989). See *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 130-132 (1992) (*Barvenik*). Of particular importance, the right or interest asserted must be one that the statute under which a

plaintiff claims aggrievement intends to protect. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 431 (1949). Contrary to the plaintiffs' claim, *Bell* does not stand for the proposition that allegations of injury that may establish a claim of "aggrievement" under G. L. c. 40A automatically establish "aggrievement" under G. L. c. 40B. See *Hingham Campus, supra* at 367 (it is "inappropriate to rely" on G. L. c. 40A to establish standing where permit was issued pursuant to G. L. c. 40B, and "we should not look to the more general statutory scheme of G. L. c. 40A, § 17, to determine standing" under G. L. c. 40B).

The interests protected by G. L. c. 40B differ from, and in some respects are inconsistent with, those protected by G. L. c. 40A. Compare *Kane* v. *Board of Appeals of Medford*, 273 Mass. 97, 104 (1930) (purpose of zoning law is "to stabilize property uses in the specified districts in the interests of the public health and safety and the general welfare, and not to permit changes, exceptions or relaxations except after such full notice as shall enable all those interested to know what is projected and to have opportunity to protest"); *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 476 (1986) (abutters in single-family, one-acre zoning district had standing to challenge G. L. c. 40A special permit because of "legitimate interest in preserving the integrity of the district from the intrusion of multi-family housing"), with *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, 436 Mass. 811, 822 (2002) (comprehensive permit process under G. L. c. 40B designed to override local opposition to low income housing). The reference in G. L. c. 40B, § 21, to G. L. c. 40A, § 17, must be construed in a manner that effectuates the intent of the act. Although the Legislature chose in G. L. c. 40B, § 21, to incorporate the judicial review procedure established in G. L. c. 40A, § 17, the substantive standing requirements of G. L. c. 40A are neither the same as nor incorporated into G. L. c. 40B.

We next consider whether diminished real estate values constitute a basis for standing to challenge the issuance of a comprehensive permit. We have long recognized that the Legislature's intent in enacting G. L. c. 40B, §§ 20-23, is "to

provide relief from exclusionary zoning practices which prevented the construction of badly needed low and moderate income housing" in the Commonwealth. *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 354 (1973). See generally *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, *supra* at 820-824. The statute reflects the Legislature's considered judgment that a crisis in housing for low and moderate income people demands a legislative scheme that requires the local interests of a town to yield to the regional need for the construction of low and moderate income housing, particularly in suburban areas. See G. L. c. 40B, §§ 20, 23. See also *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, *supra* at 814-815; *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, *supra* at 354-355. As we described in these and other cases, to effectuate this purpose the act establishes a streamlined comprehensive permitting procedure, *Hingham Campus*, *supra* at 370, permitting a developer to file a single application to the local zoning board of appeals for construction of low or moderate income housing. G. L. c. 40B, § 21. In cities and towns that have not met the minimum statutory threshold of affordable housing,[15] a developer may override bulk, height, dimensional, use, and other limitations, often invoked as a pretext to exclude affordable housing. See *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, *supra* at 354. See also Krefetz, The Impact and Evolution of the Massachusetts Comprehensive Permit and Zoning Appeals Act, 22 W. New Eng. L. Rev. 381, 386-387 (2001). In addition to streamlining the permitting process itself, the clear intent of the Legislature was to promote affordable housing by minimizing lengthy and expensive delays occasioned by court battles commenced by those seeking to exclude affordable housing from their own neighborhoods.

---

[15]A need for affordable housing exists where fewer than ten per cent of the housing units in a city or town qualify as low or moderate income housing. G. L. c. 40B, § 20. The act defines "[l]ow or moderate income housing" as "any housing subsidized by the federal or state government under any program to assist the construction of low or moderate income housing as defined in the applicable federal or state statute, whether built or operated by any public agency or any nonprofit or limited dividend organization." *Id.* It is not disputed that Andover has not satisfied its ten per cent minimum obligation for affordable housing under G. L. c. 40B.

In light of these oft-repeated objectives, we have no hesitation in concluding that granting standing to challenge the issuance of a comprehensive permit under G. L. c. 40B, § 21, to those who claim a diminution in the value of their property frustrates the intent of the Legislature. It is also inconsistent with our long-standing jurisprudence that standing to challenge a zoning decision is conferred only on those who can plausibly demonstrate that a proposed project will injure their own personal legal interests *and* that the injury is to a specific interest that the applicable zoning statute, ordinance, or bylaw at issue is intended to protect. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 431 (1949) ("we must inquire what peculiar legal rights were intended to be given to the plaintiff by the statute permitting an appeal"). See also *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977) (party has standing when alleging "injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred"); B.C. Levey, Massachusetts Zoning and Land Use Law § 5-26(b) (1996 & Supp. 1998) (plaintiff must show that proposed project "will injure his legal or property interests *and* that the injury is to an interest the zoning law was intended to protect"); Healy, Judicial Review of Variance and Special Permits, 1 Massachusetts Zoning Manual § 11.5.2 (b), at 11-39 (Mass. Continuing Legal Educ. 2000 & Supp. 2002) (to be "person aggrieved," plaintiff's injury "must relate to a cognizable interest protected by the zoning provisions at issue"). Accordingly, we look to the interest protected by G. L. c. 40B, namely, the expansion of affordable housing throughout the Commonwealth, to resolve the plaintiffs' claim of standing.

The preservation of real estate values of property abutting an affordable housing development is clearly not a concern that the G. L. c. 40B regulatory scheme is intended to protect. As the developer points out, such a result is antithetical to the purposes of G. L. c. 40B, which seeks to provide critically needed affordable housing throughout the Commonwealth. It would grant standing to challenge a comprehensive permit to persons who object to the construction of any affordable housing project simply by claims that the introduction of affordable housing for

low and moderate income persons would cause their property values to drop. Rather, the interest in the provision of critically needed affordable housing must be balanced against the statutorily authorized interests in the protection of the safety and health of the town's residents, development of improved site and building design, and preservation of open space. See G. L. c. 40B, § 20.

In concluding that diminution in real estate values "is an injury that is a tangible and particularized injury to a private property or legal interest protected by zoning law," *Standerwick*, *supra* at 341, the Appeals Court relied on *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55, 59 (1992), *S.C.*, 415 Mass. 329 (1993). *Tsagronis* was decided under G. L. c. 40A, and we have already recognized that G. L. c. 40A and c. 40B are separate and distinct statutory schemes. In any event, the ruling in that case is not as sweeping as the plaintiffs posit. The plaintiff-abutters in that case appealed from the issuance of a variance under G. L. c. 40A, claiming that construction of a house on a neighboring nonconforming lot would partially obstruct their water view, thereby diminishing the value of their property. The trial judge found that the plaintiffs were aggrieved persons under G. L. c. 40A, § 17, and this court concluded that the judge was warranted in so finding. *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329, 330 n.4 (1993). *Tsagronis* is consistent with our determination in this case. The plaintiffs identified an injury personal to them: the diminution in value of their property. The attendant legal interest that the zoning scheme at issue protected was the interest in "preventing further construction in a district in which the existing development is already more dense than the applicable zoning regulations allow." *Tsagronis* v. *Board of Appeals of Wareham*, *supra* at 58-59, citing *DiCicco* v. *Berwick*, 27 Mass. App. Ct. 312, 315 (1989). It was the plaintiffs' claim that the issuance of the variance adversely impacted them directly *and* that their injury related to a cognizable interest protected by the applicable zoning law — the interest in preserving a certain level of density in the zoning district — that conferred standing on them.

A claim of diminution of property values must be derivative of or related to cognizable interests protected by the applicable

zoning scheme. See *Tranfaglia* v. *Building Comm'r of Winchester*, 306 Mass. 495, 503-504 (1940) (zoning legislation "is not designed for the preservation of the economic value of property, except in so far as that end is served by making the community a safe and healthy place in which to live"). To untether a claimed diminution in real estate values from an interest the zoning scheme seeks to protect would permit any abutter who claims that any change in property use would diminish the value of property to obtain standing to challenge a zoning decision. A developer may conclusively demonstrate, for example, that an increase of traffic will not adversely impact plaintiffs or their property such that plaintiffs are unable to establish a traffic-related "aggrievement." The developer did so in this case. But a real estate appraiser may then opine that the increase in traffic will nevertheless cause a property to diminish in value, as the plaintiffs' real estate appraiser did in this case. To confer standing in such circumstances would permit any plaintiff to make an "end run" around the rigorous standing requirements we have consistently recognized. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston, supra.*[16]

3. *Rebuttable presumption of standing.* We turn now to consider the plaintiffs' other asserted grounds of standing. See note 9, *supra,* and accompanying text. The case is before us on further appellate review of a grant of summary judgment and we therefore view the material evidence in its light most favorable to the nonmoving party. *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). The moving party, here the developer, may satisfy its burden of demonstrating the absence of triable issues, *Pederson* v. *Time, Inc.,* 404 Mass. 14, 16-17 (1989), by establishing that the plaintiffs will not be able to prove an essential element of their case. *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 716 (1991).

---

[16]The judge in the Superior Court did not address the plaintiffs' concern that the development will change the rural character of the neighborhood, resulting in a decrease in privacy. Relying on *Harvard Sq. Defense Fund, Inc.* v. *Planning Bd. of Cambridge,* 27 Mass. App. Ct. 491, 493 (1989), the Appeals Court correctly noted that "[a]n interest in preserving the rural character of the neighborhood is not a legally cognizable interest to be considered in determining standing." *Standerwick, supra* at 345.

As abutters, the plaintiffs are entitled to a rebuttable presumption that they are "persons aggrieved" under the act.[17] See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996); *Watros, supra* at 110-111; *Marotta, supra* at 204. This presumption originates in our jurisprudence concerning G. L. c. 40A, see *Marotta, supra*, but its reasoning — that those entitled to notice of the proceedings are presumed to have the requisite interest — applies with equal force in the context of challenges to comprehensive permits issued pursuant to G. L. c. 40B. Once the presumption is rebutted, the burden rests with the plaintiff to prove standing, which requires that the plaintiff "establish — by direct facts and not by speculative personal opinion — that his injury is special and different from the concerns of the rest of the community." *Barvenik, supra* at 132. The developer argues that the Appeals Court misconstrued the evidence required to rebut the presumption of standing. We agree.[18]

Once a defendant "challenges the plaintiff's standing and offers evidence to support the challenge . . . the jurisdictional issue is to be decided on the basis of the evidence with no benefit to the plaintiff from the presumption." *Barvenik, supra* at 131. See *Marotta, supra* ("If the issue [of standing] is contested, and any additional evidence is offered, the point of jurisdiction will be determined on all the evidence with no benefit to the

---

[17]Hearings on an application for a comprehensive permit are held subject to the provisions of G. L. c. 40A, § 11. See G. L. c. 40B, § 21. "Parties in interest" entitled to notice of hearings under G. L. c. 40A, § 11, are presumed to be "persons aggrieved." See *Watros* v. *Greater Lynn Mental Health & Retardation Ass'n*, 421 Mass. 106, 110-111 (1995). See also *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 203-204 (1957). General Laws c. 40A, § 11, defines "[p]arties in interest" as including "abutters, owners of land directly opposite on any public or private street or way, and abutters to the abutters within three hundred feet of the property line of the petitioner."

[18]The Appeals Court has noted a lack of clarity concerning the amount and nature of evidence required to rebut a presumption of standing. See, e.g., *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 212 n.6 (2003) ("The quantum of evidence necessary to bring about elimination of the presumption has not been defined with precision"); *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 131 n.7 (1992) (standing decisions "have not explicitly addressed the issue of the amount or nature of the defendant's evidence required" to rebut presumption).

plaintiffs from the presumption as such").[19] We have explained that to rebut the presumption, the defendant must offer evidence "warranting a finding contrary to the presumed fact." *Marinelli* v. *Board of Appeals of Stoughton,* 440 Mass. 255, 258 (2003). See *Watros, supra* at 111 (presumption "recedes when a defendant challenges a plaintiff's status as an aggrieved person *and offers evidence supporting his or her challenge*"; presumption "is destroyed upon the defendant's offer of evidence warranting a finding contrary to the presumed fact"). Compare *Clifford* v. *Taylor,* 204 Mass. 358, 361 (1910) (on introduction of evidence that "tends to control" presumed fact, "the case is to be determined upon the whole evidence") with *Scaltreto* v. *Shea,* 352 Mass. 62, 64 (1967) (rebuttable presumption "continues only until evidence has been introduced which would warrant a finding contrary to the presumed fact").

A presumption does not shift the burden of proof; it is a rule of evidence that aids the party bearing the burden of proof in sustaining that burden by "throw[ing] upon his adversary the burden of going forward with evidence." *Epstein* v. *Boston Hous. Auth.,* 317 Mass. 297, 302 (1944). See *Thomes* v. *Meyer Store, Inc.,* 268 Mass. 587, 589 (1929) (presumption is not evidence but rule of evidence that "disappears when the facts are shown"); *Duggan* v. *Bay State St. Ry.,* 230 Mass. 370, 378 (1918), quoting *Mobile, Jackson & Kan. City R.R.* v. *Turnipseed,* 219 U.S. 35, 43 (1910) (presumption "stands only until the facts are shown" and "cast[s] upon" defendant "the duty of producing some evidence to the contrary"); *Wyman* v. *Whicher,* 179 Mass. 276, 277-278 (1901) (burden of going forward with evidence to rebut presumption does not change burden of proof).[20] See also 9 J. Wigmore, Evidence § 2487 (c), (d) (Chadbourn rev. ed. 1981); *id.* at § 2491 at 304-305. Thus, an abutter

---

[19]Numerous cases have relied on this standard. See, e.g., *Marashlian* v. *Zoning Bd. of Appeals of Newburyport,* 421 Mass. 719, 721 (1996); *Denneny* v. *Zoning Bd. of Appeals of Seekonk,* 59 Mass. App. Ct. 208, 212 (2003); *Valcourt* v. *Zoning Bd. of Appeals of Swansea,* 48 Mass. App. Ct. 124, 127-128 (1999); *Cohen* v. *Zoning Board of Appeals of Plymouth,* 35 Mass. App. Ct. 619, 621 (1993); *Redstone* v. *Board of Appeals of Chelmsford,* 11 Mass. App. Ct. 383, 384-385 (1981); *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 215-217 (1975).

[20]In *Marinelli* v. *Board of Appeals of Stoughton,* 440 Mass. 255 (2003), we held that the defendant did not successfully rebut the plaintiff's presumption

is presumed to have standing until the defendant comes forward with evidence to contradict that presumption. Our conclusion that this evidence must "warrant a finding contrary to the presumed fact" does not shift the burden of proof on the issue of standing to the defendant. See *Wyman* v. *Whicher, supra.* See also *Perley* v. *Perley*, 144 Mass. 104, 107-108 (1887) (if presumed fact is "met and encountered" by defendant's contrary evidence, burden of proof remains with plaintiff and is "not for the defendant to show that [the presumed fact] does not exist").

In a summary judgment context, a defendant is not required to present affirmative evidence that refutes a plaintiff's basis for standing. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714 (1991), citing *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 328 (1986) (material supporting motion for summary judgment "need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest" but "must demonstrate that proof of that element at trial is unlikely to be forthcoming"). It is enough that the moving party "demonstrate[], by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving" a legally cognizable injury. *Kourouvacilis* v. *General Motors Corp.*, *supra* at 716. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974) (summary judgment granted on pleadings, depositions, answers to interrogatories, responses to requests for admission, or affidavits). In this case, the developer presented evidence sufficient to warrant a finding that the plaintiffs' claims of aggrievement did not confer standing on them under the act, as we now explain.

First, through unchallenged affidavits of its experts, the developer established that the plaintiffs' claims of traffic and drainage problems were unfounded. The developer was not required to support its motion for summary judgment with affidavits on each of the plaintiffs' claimed sources of standing; its reliance on the plaintiffs' lack of evidence as to the other

of standing. We stated in passing that we declined "the board's invitation to shift the burden of proof to [the plaintiff]." *Id.* at 258. We clarify that the plaintiff always bears the burden of proof on the issue of standing. An abutter's presumption of standing simply shifts to the defendant the burden of going forward with the evidence.

claims, obtained through discovery, had equal force. See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 554 (1999) (defendants rebutted plaintiff's presumption of standing where plaintiff's deposition testimony "failed to show that the proposed project will impair any interests of the [plaintiff] that are protected by the zoning law"); *Cohen* v. *Zoning Bd. of Appeals of Plymouth*, 35 Mass. App. Ct. 619, 622 (1993) (deponents' inability to "articulate whether or how the plaintiffs would be injured" were not conclusive but caused presumption of standing "to recede"). Cf. *Watros, supra* at 108 (*defendant's* denials and affirmative defenses insufficient to make presumption of standing recede); *Valcourt* v. *Zoning Bd. of Appeals of Swansea*, 48 Mass. App. Ct. 124, 128 (1999) (defendants' answer to plaintiffs' complaint and memoranda of law opposing plaintiffs' motions for summary judgment did not qualify as evidence supporting challenge to plaintiffs' presumptive standing). Through discovery of the plaintiffs, the developer demonstrated that the plaintiffs had no factual basis for their claims of increased crime or vandalism. The judge, in his discretion, determined that this concern was "beyond the scope of common knowledge, experience and understanding" and that expert evidence was therefore necessary to establish aggrievement. See *Barvenik, supra* at 137 n.13. Because the plaintiffs offered no expert evidence to support their concerns that crime or vandalism would increase, their responses to discovery were, as the judge found, nothing more than unsupported "apprehension and speculation."

In the context of a challenge to a comprehensive permit issued in G. L. c. 40B, a contrary ruling would place unnecessary and potentially onerous financial burdens on every developer. The construction of multiple-unit housing complexes, which frequently comprise the developments at issue under G. L. c. 40B proceedings, in rural, semi-rural, or suburban areas zoned for single-family use will necessarily increase the population of a community. Every increase in population gives rise to a host of potential consequences — for example, an increase in the likelihood of contagious diseases, an increase of noise from passing automobiles, or an increase in vandalism. When the persons challenging a permit concede that they have nothing

more than unfounded speculation to support their claims of injury, our law does not require that a developer come forward with expert evidence to challenge every such speculative injury.

It is not sufficient for a defendant simply to file a motion for summary judgment, or to deny the plaintiffs' allegations. But the developer may rebut a presumption of standing by seeking to discover from such plaintiffs the actual basis of their claims of aggrievement. If a person claiming to be aggrieved can point to no such evidence, a party seeking summary judgment is entitled to rely on that fact.

Once the developer in this case rebutted the plaintiffs' presumption of standing, the plaintiffs were required to, but did not, meet their burden to establish standing. The plaintiffs relied solely on two affidavits supporting their claim of a potential decrease in real estate values, a concern not protected by G. L. c. 40B. Cf. *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 213-214 (2003) (plaintiff did not have standing after defendant rebutted plaintiff's presumptive standing, and plaintiff offered no evidence in response, other than her own "speculative and conclusory" testimony). The developer successfully established that the plaintiffs had no reasonable likelihood of proving they were "aggrieved" persons.

*Judgment affirmed.*